IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

PERRY MASK                                                                              PETITIONER

V.                                                 CIVIL ACTION NO: 1:09CV265-SA-JAD

RON KING, et al.                                                RESPONDENTS

## REPORT AND RECOMMENDATION

Perry Mask shot and killed Charles Bascomb. Bascomb's son Jason Zubke witnessed the shooting. He testified that Mask approached Bascomb's car saying, "You don't think I will shoot you. I will." He then shot Bascomb. Though he then told Zubke he meant to scare his father not shoot him, Mask threatened to kill Zubke and his family if his name was given to law enforcement. He fled the scene and actively evaded capture by law enforcement for just under three weeks after the shooting.

Mask was convicted of murder in the Circuit Court of Alcorn County, Mississippi. He was sentenced to life in prison. Since he was also adjudicated an habitual criminal, he will not be eligible for parole. His conviction and sentence were affirmed by the Mississippi Court of Appeals. The Mississippi Supreme Court rejected his motion for leave to file for post-conviction relief. His petition for writ of habeas corpus in this court raises multiple issues.

## LIMITATIONS ON REVIEW

Because there is no question that Mask has fully complied with all procedural requirements of Mississippi and federal habeas law, this court must consider each of their claims on the merits. This court's power to upset the judgments of the state courts in a criminal matter is appropriately very limited. The federal courts address only issues affecting substantial federal constitutional rights. The federal courts do not function as super-appellate courts over the states and hold no

supervisory authority over those courts. The federal courts may not correct errors of state law unless they also violate the constitutional rights of an accused. *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1981); *Engle v. Isaac,* 456 U.S. 107, 121, n. 21, 102 S.Ct. 1558, n. 21, 71 L.Ed.2d 783(1982); *Gilmore v. Taylor*, 508 U.S. 333, 348-349, 113 S. Ct. 2112, 2121, 124 L.Ed.2d 306 (1993) (O'Connor, J. concurring) (A mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas.").

Even in matters affecting fundamental constitutional rights the federal courts have a very limited scope of review. Title 28 U.S.C. § 2254(d) of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The federal courts may not disturb the legal holdings of the state courts even if convinced they are erroneous. The federal courts may intervene only if it the application of federal law is also objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389(2000). The AEDPA presumes each factual finding by the state courts is correct. These findings can be disturbed only if the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This petitioner's claims have been reviewed in light of the AEDPA's limitations.

2

## GROUND ONE-GRANTING OF FLIGHT INSTRUCTION

Mask's first complaint is that the trial court erroneously granted a flight instruction.[1] As noted above Mask fled the scene of the shooting and continued to evade law enforcement for several weeks. He did not testify at trial, but an investigator mentioned two statements given by Mask. In the first Mask claimed the shooting was an accident. In the second statement Mask claimed that he had shot Bascomb because Bascomb was going to kill him.

Mask claims that the trial court erred in granting a "flight" instruction, claiming that Mississippi law does not allow the granting of this instruction where there is an explanation for the flight or where a party is claiming to have acted in self defense. As a general rule, jury instructions do not form a basis for habeas corpus relief. *Williams v. Lockhart*, 736 F.2d 1264, 1267 (5th Cir. 1984); *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) *citing Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973). Habeas corpus relief is only available when a petitioner establishes that improper instructions caused a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *Williams*, 736 F.2d at 1267(citing *Brouillett v Wood*, 636 F. 2d 215, 218( 8th Cir. 1980)).

There is not only no constitutional error, but there does not appear to be any error of state law. Mask did not testify. He therefore did not raise self defense at the trial, and the reference to his conclusory, self-serving claim that he acted in self defense was determined to be insufficient to

---

[1] The Court instructs the Jury that flight is a circumstance from which guilty knowledge or fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt, that the defendant, PERRY L. MASK, did flee from the scene from the scene of the death of Charles A. Bascomb, then the flight of PERRY L. MASK is to be considered in connection with all other evidence in this case. You will determine from all of the facts whether the flight was from a conscious sense of guilt or whether it was caused by other things, and give it such weight as you think it is entitled in determining the guilt or innocence of PERRY L. MASK. (R. 199).

raise self defense by the Mississippi Court of Appeals. There was no error according to the state court in the granting of this instruction.

Additionally even if fearing retribution at the scene, testimony established that Mask deliberately evaded law enforcement for 20 days after the shooting. No explanation for this evasion exists in the state court record. Mask's self-serving statements in his habeas petition about fear of retribution if he did not flee the scene and his admission that he was in fact trying to evade the police cannot be considered because not part of the state court record. In any event Mask's statements if credited do not make the granting of the instruction erroneous under state law. He is entitled to no relief on this ground.

## GROUND TWO-COMMENT ON FAILURE TO TESTIFY

Mask asserts that the prosecution made an improper comment on his failure to testify in the closing argument. His attorneys objected to the comment but the objection was overruled and the contemporaneous motion for a mistrial was denied.

During his closing argument one of Mask's attorney's argued to the jury:

Now, when Mr. Beckner [a law enforcement investigator] was on the witness stand, he testified he investigated and he gathered information from the witnesses. Even in his investigation, he didn't even know what a lot of people said, and he just took Mr. Zubke's statement and went on. He was convinced nothing more to it, case solved, but ... the case is not solved. Something more should have been done. Something more should have been presented on that witness stand as far as witnesses are concerned, as far as documents are concerned, to make you feel comfortable as to what decision you are going to make. And I submit to you, ladies and gentlemen of the jury, that there is not sufficient evidence (R.433-4).

The prosecution responded:

Mr. Comer also alludes to these other witnesses. They put witnesses on the stand that testified. They can call those witnesses also if there is pertinent evidence (R. 436).

Mask contends not only does this constitute an impermissible comment on his failure to testify but that the comment also had the effect of shifting the burden of proof to him.

The Fifth Amendment's privilege against self-incrimination forbids direct or indirect comment by the prosecution on the accused's silence. *See Griffin v. State of California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed. 2d 106 (1965). The prosecution may never suggest to the jury that it treat the defendant's silence as substantive evidence. *United States v. Robinson*, 485 U.S. 25, 32, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988). The prosecution however may argue the defense's failure to counter or explain the evidence as opposed to the defendant's failure to testify. *United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996).

All prosecutorial comments must be examined in context. *See Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The court must determine "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Grosz*, 76 F.3d at 1326. The prosecutor's comment may not manifest intent to comment on the accused's silence if there is some other plausible explanation for the remark. *See Robinson*, 485 U.S. at 32-33 (prosecutor's comments were made to rebut defense remarks that the defendant was not given a fair opportunity to explain). Comments made by the prosecution in "fair response to a claim made by defendant or his counsel" does not violate the Fifth Amendment. *Id.*

Additionally "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873-74, 40 L.Ed.2d 431 (1974).

Finally even if a comment is impermissible there is no automatic reversal. Reversal is required only if it had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (citations omitted). The court must consider the strength of the evidence of the defendant's guilt. *United States v. Davis*, 609 F.3d 663, 682 (5th Cir. 2010) (citations omitted). Improper prosecutorial comments are constitutionally unfair only if they are persistent and pronounced, or if the evidence is so weak that no conviction would have occurred but for the remarks. *Woodfox v. Cain*, 609 F.3d 774, 806 (5th Cir. 2010). A constitutional error can be harmless but the court must be able to declare that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967).

The Supreme Court explained what is permissible as a fair response to defense argument in *United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1987). During the *Robinson* trial, the defense argued that the government did not allow the defendant to explain his side of the story. At closing argument, the prosecutor told the jury that the defendant "could have taken the stand and explained" his version of events. Although no objection was made, the court gave a cautionary instruction informing the jury that "no inference whatever may be drawn from the election of a defendant not to testify."

The Supreme Court grant certiorari. The Court noted, "Under *Griffin* . . . it is improper for either the court or the prosecutor to ask the jury to draw an adverse inference from a defendant's silence. But I do not believe that the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weakness in the defense case." *Id.* at 32 (citing Stevens, J. concurring in *Griffin*). Construing *Griffin* narrowly,

the Court held that the prosecutor's comments were a fair response to the defendant's argument. Thus, the comments in *Robinson* were deemed proper under the circumstances.

The prosecutor's comments in Mask's case like in *Robinson* were clearly in response to and in rebuttal to the defense argument. Mask's attorneys argued that the evidence was insufficient and that more proof should have been put on by the state. Unlike the prosecutor in *Robinson* who unambiguously referred to the defendant's failure to testify, the comment in Mask's case does not refer to Mask directly but rather was a comment directed at fending off the suggestion that anything was hidden or that any witnesses or evidence that was pertinent to the case had been omitted by the prosecution. Additionally even if the comments were found to be improper, the jury was instructed on Mask's right not to testify. They were specifically instructed that they were not to speculate as to the reasons for his not testifying nor were they allowed to draw any inferences from the fact that he did not testify. (R. 194). Finally the proof of Mask's is guilt overwhelming. There was no impermissible comment and any error is harmless beyond a reasonable doubt.

Mask's second argument in this ground is also unavailing. This isolated comment by the prosecutor cannot be construed as having shifted the burden of proof to Mask. The court's instructions to the jury repeatedly referred to the "beyond a reasonable doubt" standard of proof and told the jury the burden of proof was on the prosecution. Defense counsel's closing went through these instructions in some detail. No jury under these circumstances would get confused by this statement.

### GROUND THREE-INSUFFICIENCY OF THE EVIDENCE

Mask asserts that the evidence is insufficient to support the verdict of guilty. When faced with an insufficiency of evidence claim, a federal court on habeas review must remember both its

7

limitation, *i.e.*, it may not "make its own subjective determination of guilt or innocence," *Jackson v. Virginia*, 443 U.S. 307, 319 n.13, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), and its function. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. The court is not at liberty to substitute its conclusions for those of the jury.

Applying that standard, the undersigned finds the record contains sufficient inculpatory evidence from which a rational trier of fact could have found the petitioner guilty. The only other witness to the shooting testified that Mask approached from behind announcing his willingness to shoot the victim. The gun then discharged striking the victim in the back at his shoulder blade. Mask claimed he had intended to frighten the victim, not shoot him. Mask then threatened to kill the witness and his family if his name was mentioned to law enforcement. The jury was instructed on two prosecution theories of the killing : intentional murder and depraved heart murder. If they accepted Mask's first declared intention, the evidence makes out an intentional murder. If they accepted his statement after the shooting that he did not intend to shoot, the evidence supports a jury finding of depraved heart murder.

Mask points to inconsistencies in the witness' statements to law enforcement and medical personnel and to the fact that the witness had smoked marijuana on the day of the shooting. All these things are matters of impeachment which were brought out before the jury by Mask's attorneys in the defense. It was for the jury to determine the credibility of this witness. This court cannot overturned the jury's determination to credit this witness' testimony.

## GROUND FOUR-INEFFECTIVE ASSISTANCE OF COUNSEL

Mask asserts that both his trial attorneys and his appellate counsel were ineffective in their representation of him. To establish ineffective assistance of counsel the petitioner must show, (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997). The petitioner must show that counsel's representation "fell below the objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.

The deficiency determination is not unguided. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed.3d 83 (1955). The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decisions in a highly deferential manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994), *citing Strickland*, 466 U.S. at 689.

If counsel's performance is deemed "to have been deficient, then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson*, 107 F.3d 282, 286, n.9 (5th Cir. 1997). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998). In order to make the required showing on the prejudice prong of *Strickland*, a petitioner must not just allege, but must actually prove prejudice. *Bonvillain v. Blackburn*, 78 F. 1248, 1253 (5th Cir. 1986).

Finally it must be noted that this court does not make the *Strickland* determination *de novo*, but consistent with the restraints on the scope of review may only grant relief if the state court in making its *Strickland* determination has acted contrary to United States Supreme Court law or has unreasonably applied that law.

a. Trial counsel

A synopsis of the nature of the defense provided at trial seems to be in order. Mask's trial counsel clearly left no stone unturned when it came to the pursuit of discovery and the filing of pretrial motions. The filings were extensive, nor were the motions *pro forma* but each was presented and argued before the judge. A pretrial motion for the allowance of attorneys fees showed over six weeks of preparation before trial. When this motion drew protests from the state that it was excessive and/or inflated, the trial judge rejected the protest and any implication that these two attorneys had been less than candid in their billings.

The record from the trial makes it plain that there was a coherent, reasonable theory on how to defend the case. Clearly the case was not going to be easy to defend. The victim's son was an eyewitness to the shooting. The inconsistencies found in his statements related to minor matters. On the particulars of who the shooter was and how the shooting occurred there were no inconsistencies. The defendant had not merely fled the scene, which would be more easily explained, but had evaded law enforcement in several different counties for three weeks and two states before he was finally apprehended in Tennessee.

When Mask was captured he made two conflicting statements to law enforcement alternately making a claim of accident and a conclusory claim of self-defense. There was no physical or other evidence to support his claim of self defense. There was no evidence that the victim intended to or

had ever threatened Mask. There was no evidence that he behaved in an aggressive manner toward Mask before the shooting. The only evidence was that the victim was unarmed when shot. Because the victim was shot in the back, the physical evidence rebutted Mask's claim of an accidental shooting as the two men fought over the gun and his claim of self defense. Additionally Mask had a substantial criminal record that would likely be used to impeach him if he took the stand. Under these circumstances Mask's attorneys would reasonably advise their client against testifying.

The manifest strategy of the defense was to point out every inconsistency in the eye witness' statements and to attempt to cast doubt on the adequacy of the investigation. These lawyers by cross examination and presentation of a limited number of witnesses tried to cast as much doubt as possible on the state's case and to argue that there remained a reasonable doubt about Masks' guilt. Though their client was convicted, a review of the record demonstrates that Mask was capably defended.

Mask begins his attack by asserting that his attorneys were ineffective in reserving their opening argument at the beginning of the trial and in failing to give an opening statement at the beginning of the defense case. His attorneys opted to defer their opening argument at the beginning of the case. Mississippi state law specifically sanctions such a deferment in its procedural rules. Rule 10.03 Mississippi Uniform Rules of Circuit and County Court Practice. The record contains the rationale of Mask's counsel regarding the decision to defer the opening argument. The lawyers stated that they were unsure of exactly what the state would prove and did not want to make an opening statement at that time. One of the lawyers specifically pointed to the possibility of some failure of proof or some change of tactics by the prosecution as justification for this strategy. This decision and the later decision to forego opening before presenting the defense witnesses was a

11

matter of trial tactics and strategy. With "the almost infinite variety of possible trial techniques and tactics available to counsel" this court must be "careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir.1993).

The overall defense strategy was to try to impeach witnesses on cross-examination, to suggest scenarios consistent with Mask's innocence at least of the murder charge and to raise a reasonable doubt in the juror's minds. The strategy did not include attempting to defend Mask by presenting affirmative proof. Even the witnesses called by the defense were called to cast doubt on the thoroughness of the investigation and to impeach the testimony of the sole eyewitness to the crime. The record shows nothing other than "[a] conscious and informed decision on trial tactics and strategy" which "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Johnson v. Dretke,* 394 F.3d 332, 337 (5th Cir.2004) (citations omitted); *accord United States v. Jones,* 287 F.3d 325, 331 (5th Cir.2002) (citation omitted). The decision to defer, then skip the opening, was consistent with the overall strategy of defense. It does not amount to ineffective assistance of counsel, nor is there any indication of prejudice to Mask by the decision.

Next Mask claims that his attorneys were ineffective because they both advised him not to testify and prevented him from doing so by threatening to withdraw if he insisted on testifying. Mask was however questioned about the decision not to testify by the trial court on the record. He was advised by the trial judge that he had the right to testify and the right not to testify if he so chose. He was specifically asked if he had been subjected to any threats regarding his testimony. He replied in the negative. He was asked if he had reached the decision not to testify of his own free

will and responded in the affirmative. The record does not support his claim that the decision was forced on him.

Nor were his attorneys ineffective in counseling him not to testify. Mask's attorneys were confronted with damning eye witness testimony; a client with a long criminal record; who also told two different, inconsistent stories about the shooting. Both of Mask's statements inconveniently did not square with the physical proof that the victim had been shot in the upper back. Then Mask's flight was damning evidence against him. Advising Mask not to testify under the circumstances was not only **not** ineffective assistance of counsel, but appears to be the only professionally reasonable advice these lawyers could have given him.

Mask next argues that his attorneys were ineffective in failing to challenge the testimony and qualifications of Dr. Steven Hayne. Dr. Hayne testified to his findings on autopsy. Of late Dr. Hayne's practice and qualifications have been subjected to media scrutiny and multiple challenges. Mask has failed to make any record on Dr. Hayne's qualifications or any grounds for objecting to his testimony. With these omissions, this claim fails. The undersigned however notes the Mississippi Supreme Court, has in the face of recent challenges, recognized that Dr. Hayne is qualified to testify as a forensic pathologist and that he has having a board certification in that field. This court has in another case held an evidentiary hearing on a state habeas case which included a challenge to Dr. Hayne's qualifications including the board certification. Evidence was presented that Hayne possesses a board certification in the field, though not from the dominant professional body. *Dendy v Jenkins*, 1:06CV284, Dkt. 82, 86. Mask's attorneys were not ineffective in failing to launch an attack on the doctor.

Mask complains that his attorneys failed to call two witnesses he says were willing to testify to the victim's violent nature. The Fifth Circuit has consistently held that "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). *See also Boyd v Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Washington v Watkins*, 655 F.2d 1346, 1363-1364 (5th Cir. 1981). "Where the only evidence of a missing witness' testimony is from the defendant, this Court views the claims of ineffective assistance with great caution." *Lockhart v McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

Mask says that his attorneys were aware of the witnesses. In a hearing on a motion for continuance one defense attorney referred to the statement by the wife of one of these witnesses. According to the statement, both Mask and her husband were involved in using and selling methamphetamine. Both were mad at the victim because he had cheated them in a drug deal. While this witness would probably have invoked his own Fifth Amendment rights, given that his testimony could provide the prosecution with proof of the motive for the shooting, the failure to call him was effective not ineffective assistance of counsel.

Mask has failed to demonstrate that any testimony from the other witness would have been admissible. Character testimony is not generally admissible under Mississippi law. He has certainly failed to show that this testimony would have been enough to create a reasonable doubt about his guilt. *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998).

Mask also complains that his attorneys failed to challenge the convictions used to enhance his punishment under Mississippi's habitual offender statute. § 99-19-81, Miss. Code Ann.

Mississippi law provides that a sentence may be suspended only for a first offender. Because Mask had three different felony sentences suspended, the second and third suspended sentences were illegally lenient. Mask should have been required to actually serve some time on these later sentences. Had he advised the sentencing courts of his prior felonies no doubt he would have been sentenced to jail. He argues that his too lenient sentences render two of the convictions invalid. However under Mississippi law, Mask's convictions are not subject to being successfully challenged after he received the benefit of the suspended sentences. *Edwards v. State*, 839 So.2d 578, 580 (Miss. Ct. App. 2003). There can be no ineffective assistance of counsel in failing to put forward frivolous objections.

  b. Appellate counsel

Mask also asserts that his appellate counsel was ineffective in the handling of the direct appeal. Criminal defendants have the right to effective assistance of counsel on a direct appeal. The *Strickland* standard applies to the performance of appellate counsel. Appellate counsel is not ineffective in failing to raise every nonfrivolous issue on appeal. *Sharp v Puckett*, 930 F.2d 450, 452-3 (5th Cir. 1991). Nor is appellate counsel required to raise every colorable issue based on a defendant's request. A brief that raises every such issue "runs the risk of burying good arguments...." *Jones v. Barnes,* 463 U.S. 745, 753, 102 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). "For judges to second-guess reasonable professional judgment and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders.*[2] Nothing in the Constitution ...requires such the standard." *Id.*4 at 754.

---

[2] *Anders v. California*, 386 U.S. 738, 87 S.Ct 1396, 18 L.Ed.2d(1967).

In Mask's case new counsel was appointed to represent him on the direct appeal. Mask complains that this attorney did not raise all the issues that Mask requested. He may ask, but the law clearly relieves his counsel of any obligation to let the client choose appellate issues.

Mask complains of the failure to raise his competency to stand trial on appeal; the failure to grant the motion for a change of venue; and the failure to raise his myriad allegations of the ineffectiveness of trial counsel. Because his trial counsel were effective in their representation of Mask, his appellate counsel cannot be faulted for failing to raise ineffective assistance of counsel claims.

His trial attorneys challenged Mask's competency to stand trial. The proof of any even mild impairment was flimsy at best. The district attorney noted at the hearing that Mask apparently was having no difficulty interacting with his attorneys at the hearing. Having heard the proof and having observed Mask, the trial judge denied the motion for a psychiatric examination. Additionally Mask's interaction on the record with the trial judge regarding his right to testify shows that Mask was able to understand and comprehend what the trial judge was telling him and to respond in a rational manner. It is apparent from that colloquy that Mask was in fact competent to stand trial. The decision to omit pressing this issue on appeal was not professionally deficient and the omission made no difference to the outcome of the appeal.

Finally Mask's appellate attorney could reasonably make a decision to omit any challenge on the change of venue given that very few of the potential jurors had any knowledge of the case. Appellate counsel was not ineffective in failing to raise these issues since they would clearly not have led to a different result on appeal.

Having reviewed the record and examined each claim in the petition, the undersigned recommends that the petition for writ of habeas corpus be dismissed with prejudice.

The parties are referred to 28 U.S.C. § 636(b)(1) and Local Rule 72(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Petitioner is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within fourteen days of this date. Petitioner is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 14th day of February, 2011.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE